**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE DEUTSCHE BANK SPOOFING LITIGATION | Case No. 1:20-cv-03638 <br><br> Hon. Joan B. Gottschall |

**PLAINTIFFS' OPENING BRIEF IN SUPPORT OF ARTICLE III STANDING**
**OR LIMITED JURISDICTIONAL DISCOVERY**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS .............................................................................................3

ARGUMENT ..................................................................................................................6

I.   Plaintiffs' Plead Article III Standing.........................................................................6

  A.   Injury-in-Fact..........................................................................................................7

  B.   Traceability..............................................................................................................9

  C.   Redressability.........................................................................................................10

II.   If the Court Holds Plaintiffs' Allegations Insufficient under Article III, the Court Should Order Jurisdictional Discovery.....................................................................11

CONCLUSION ..............................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Am. Civ. Liberties Union of Florida, Inc. v. City of Sarasota,*
    859 F.3d 1337 (11th Cir. 2017) ........................................................................ 11, 12

*Bell v. Hood,*
    327 U.S. 678 (1946) ..................................................................................................... 1

*Boim v. Am. Muslims for Palestine,*
    9 F.4th 545 (7th Cir. 2021) ...................................................................................... 2, 12

*Booker-El v. Superintendent, Ind. State Prison,*
    668 F.3d 896 (7th Cir. 2012) .......................................................................................... 6

*Crabtree v. Experian Information Solutions, Inc.,*
    948 F.3d 872 (7th Cir. 2020) ............................................................................. 3, 11, 12

*Diedrich v. Ocwen Loan Servicing, LLC,*
    839 F.3d 583 (7th Cir. 2016) ...................................................................................... 7, 8

*Equal Rts. Ctr. v. Camden Prop. Tr.,*
    No. CIV. PJM07-2357, 2008 WL 8922896 n.9 (D. Md. Sept. 22, 2008) .............................. 10

*Gelboim v. Bank of Am. Corp.,*
    823 F.3d 759 (2d Cir. 2016) ............................................................................................. 7

*Grupo Petrotemex, S.A. DE C.V. v. Polymetrix AG,*
    No. 16-CV-2401 (SRN/HB), 2019 WL 1230003 (D. Minn. Mar. 15, 2019) .......................... 12

*Harry v. Total Gas & Power N. Am., Inc.,*
    889 F.3d 104 (2d Cir. 2018) ........................................................................................ 2, 8

*In re Amaranth Natural Gas Commodities Litig.,*
    269 F.R.D. 366 (S.D.N.Y. 2010) ...................................................................................... 8

*In re Bank of Am. Corp. Sec.,*
    No. 09 MDL 2058(DC), 2009 WL 4796169 (S.D.N.Y. Nov. 16, 2009) ............................... 13

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.,*
    390 F. Supp. 3d 916 (N.D. Ill. 2019) ............................................................................... 10

*In re Commodity Exch., Inc.,*
    213 F. Supp. 3d 631 (S.D.N.Y. 2016) ............................................................................... 9

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,*
    No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) ............................................. 6

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018) ............................................................... 8

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    962 F. Supp. 2d 606 (S.D.N.Y. 2013) .......................................................... 3, 5, 6

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    No. 09 C 7666, 2012 WL 39766 (N.D. Ill. Jan. 9, 2012) ...................................... 3, 8

*In re Platinum & Palladium Commodities Litig.*,
    No. 10 Civ. 3617 (WHP), 2010 WL 11578945 (S.D.N.Y. Nov. 30, 2010) ........................... 13

*IQ Dental Supply, Inc. v. Henry Schein, Inc.*,
    924 F.3d 57 (2d Cir. 2019) ............................................................................... 8

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    244 F.R.D. 469 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009) ..................... 8

*Kohen v. Pac. Inv. Mgmt. Co. LLC*,
    571 F.3d 672 (7th Cir. 2009) ............................................................................ 6

*Loeb Indus., Inc. v. Sumitomo Corp.*,
    306 F.3d 469 (7th Cir. 2002) ............................................................................ 6

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................... 2, 6, 9

*Muellner v. U.S. Bank, N.A.*,
    No. 15-CV-0596 PJS/LIB, 2015 WL 4374180 (D. Minn. July 15, 2015) ......................... 12

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ...................................................................................... 11

*Protect Our Parks, Inc. v. Chicago Park Dist.*,
    971 F.3d 722 (7th Cir. 2020) ............................................................................ 6

*Remijas v. Neiman Marcus Grp., LLC*,
    794 F.3d 688 (7th Cir. 2015) ............................................................................ 7

*Robertson v. Allied Sols.*, LLC,
    902 F.3d 690 (7th Cir. 2018) ............................................................................ 8

*Sanner v. Bd. of Trade of City of Chicago*,
    62 F.3d 918 (7th Cir. 1995) ........................................................................ 9, 10

*Sonterra Cap. Master Fund, Ltd. v. Barclays Bank plc*,
    366 F. Supp. 3d 516 (S.D.N.Y. 2018) ................................................................... 8

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
    556 F.2d 406 (9th Cir. 1977)............................................................................................... 11

*Wernsing v. Thompson*,
    423 F.3d 732 (7th Cir. 2005)............................................................................................... 10

Plaintiffs Rock Capital Markets, LLC ("Rock Capital"), Charles Herbert Proctor, III ("Proctor"), Robert Charles Class A, L.P. ("RCA"), David Vecchione ("Vecchione"), Todd Rowan ("Rowan"), and Atlantic Trading USA, LLC ("Atlantic Trading") (collectively, "Plaintiffs") respectfully submit this memorandum of law in response to the Court's Order (ECF No. 49).

## INTRODUCTION

The Court's Order directs the parties to brief two questions: "(1) does the complaint adequately allege the elements of Article III standing? And (2) if not, is limited jurisdictional discovery appropriate? These questions must be resolved before the court can reach the merits arguments presented in defendants' motion to dismiss the complaint." ECF No. 49 at 10. As explained below, the complaint alleges Article III standing. Even if it did not, limited jurisdictional discovery would be warranted.

## Article III Standing

It is only where Plaintiffs' claim is "wholly insubstantial and frivolous" that the Court may dismiss for lack of subject matter jurisdiction. *Bell v. Hood*, 327 U.S. 678, 683 (1946). The complaint alleges Article III standing sufficient to invoke the jurisdiction of this Court. At the pleading stage, the bar for Article III standing is exceedingly low. Here, the pertinent inquiry is whether it is merely "colorable" or "possible" that Plaintiffs were injured; Article III does ***not*** require Plaintiffs to plead the precise dates and times on which they suffered injury or damages. As Deutsche Bank Securities Inc. ("DBSI") spoofed Treasury and Eurodollar futures on "numerous occasions" during 2013, and ***Plaintiffs traded in those same spoofed markets every trading day and night during 2013***, it is more than possible (and hardly insubstantial or frivolous) that Plaintiffs were injured at the hands of Defendants. If anything is implausible here, it is the suggestion that Plaintiffs could somehow have avoided any injury from Defendants' pervasive misconduct in the same markets at the same time that plaintiffs were pervasively trading themselves. There is no need for the Court to use a "fine-toothed

comb*," Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 556 (7th Cir. 2021), in order to decide whether to exercise subject matter jurisdiction under Article III.

The Complaint alleges facts bringing injury more than "within the realm of possibility," *i.e.*, that Plaintiffs "may" have been harmed by DBSI's manipulation through spoofing. As the Court observed, "Plaintiffs allege a culture of rampant spoofing prevailed throughout DBSI's trading offices worldwide," ECF No. 49 at 5 (citing ¶ 57),[1] and "investigations of alleged trading misconduct and manipulation by defendants in other markets around the same time show that defendants maintained a corporate culture that encouraged spoofing and manipulation." *Id.* at 9 (citing ¶¶ 57–71). The Court further observed that the U.S. Commodity Futures Trading Commission ("CFTC") order (the "CFTC Order") found that on "multiple occasions" in 2013, DBSI spoofed the markets for Treasury and Eurodollar futures. ECF No. 49 at 6 (citing CFTC Order at 2-3). As the Court observed, Plaintiffs alleged that they "'regularly transacted'" in Treasury and Eurodollar futures. ECF No. 49 at 2 (citing ¶¶ 11–17, 31). All Plaintiffs traded "regularly" in 2013, some on "hundreds of days," and "Rock Capital Markets, LLC, and Atlantic Trading USA, LLC, on every trading day" during 2013. *Id.* (citing. ¶¶ 11–16).

Here, where Plaintiffs traded on all of the days that DBSI allegedly spoofed, the allegations demonstrate the "possibility" that they were injured by DBSI's manipulation. *See Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 111 (2d Cir. 2018) (holding plaintiffs required merely to plead colorable injury to satisfy Article III standing). Indeed, any other conclusion would require impermissibly drawing inferences against Plaintiffs, rather than in their favor. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (Courts are to "presum[e] that general allegations embrace those specific facts that are necessary to support the claim," when deciding standing at the pleadings stage). More

---

[1] Citations to paragraphs of the Complaint are as follows: "¶__."

2

particularity is not required at this juncture to meet the "low" Article III bar. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, No. 09 C 7666, 2012 WL 39766, at *6 (N.D. Ill. Jan. 9, 2012) ("While the complaint is silent as to how and where the alleged spot market transactions took place, the allegation of spot market purchases is the type of general allegation that is sufficient at this stage.").

### Jurisdictional Discovery

In the alternative, should the Court determine that Plaintiffs' allegations are deficient, the Court should order jurisdictional discovery. *See Crabtree v. Experian Information Solutions, Inc.*, 948 F.3d 872, 876 (7th Cir. 2020) (ordering "extensive and complete jurisdictional discovery on whether [plaintiff] had alleged the requisite injury-in-fact to satisfy Article III's case or controversy requirement"). As the Court aptly put it, "plaintiffs have argued forcefully and persuasively that the structure of the CME Globex system, coupled with restrictions on regulators and third parties preventing disclosure of public information about specific trades, make it nearly impossible to plead details of specific trades without some discovery from defendants." ECF No. 49 at 10 (citing ¶¶ 82–92; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 617 (S.D.N.Y. 2013)). Defendants have records of their orders and trades in Treasury and Eurodollar futures. Such records are regularly maintained by trading firms for financial, compliance and regulatory reasons. Defendants likely produced them to the CFTC during the investigation preceding the CFTC Order.

## STATEMENT OF FACTS

The Court's "Summary of the Complaint" set forth the pertinent facts. ECF No. 49 at 2-6. Plaintiffs briefly recite them here.

### Defendants' Manipulation through Spoofing

During 2013, Defendants were among the largest futures trading firms in the world, and they traded Treasury and Eurodollar Futures in multiple offices around the globe. ¶¶ 51-53. Defendants manipulated Treasury and Eurodollar futures markets through a tactic known as "spoofing." ¶¶ 72-

3

73. Defendants placed genuine orders (orders they wanted filled) alongside spoof orders (orders they intended to cancel) in the market. ¶¶ 45-47; 72-73. The purpose of the spoof orders was to artificially move the market price up or down. ¶45. After their genuine orders were filled, Defendants canceled their spoof orders. ¶¶ 72-73.

The CFTC was alerted to Defendants spoofing and launched an investigation into their illicit acts. ¶ 4. On June 18, 2020, the CFTC issued an Order accepting Defendants offer to cease and desist from spoofing and to pay a $1.25 million penalty. ¶ 4. The CFTC Order indicates that spoofing was a systematic problem within Deutsche Bank. ¶ 80-81. Unlike some other regulatory orders, here, the CFTC Order does not enumerate examples of spoofing. Instead, it states that "on multiple occasions," a Tokyo-based trader ("Trader A") spoofed the Treasury Futures market primarily—but not exclusively—during New York overnight hours. ¶¶ 74, 78. Also, on "multiple occasions," another Tokyo-based trader spoofed the Treasury and Eurodollar Futures primarily—but not exclusively— during New York overnight hours. ¶¶ 75, 78.

Nothing in the CFTC Order suggests that Defendants' spoofing was infrequent or even limited to the "multiple occasions" generally referenced therein. Instead, as the Court observed, "Plaintiffs allege a culture of rampant spoofing prevailed throughout DBSI's trading offices worldwide." ECF No. 49 at 5 (citing ¶ 57). The Court also explained that "Plaintiffs add that investigations of alleged trading misconduct and manipulation by defendants in other markets around the same time show that defendants maintained a corporate culture that encouraged spoofing and manipulation." *Id.* at 5 (citing ¶¶ 57–71).

<u>Plaintiffs' Trading</u>

Plaintiffs traded during the same period that Defendants spoofed the Treasuries and Eurodollar Futures markets. As the Court observed, in 2013, Plaintiffs allege that they "regularly transacted" in Treasury and Eurodollar futures. ECF No. 49 at 2 (citing ¶¶ 11–17, 31). Plaintiffs

traded "'regularly,' on 'hundreds of days,' or, in the case of plaintiffs Rock Capital Markets, LLC, and Atlantic Trading USA, LLC, on every trading day during the one-year class period." *Id.* (quoting ¶¶ 11–16). Indeed, Rock Capital and Atlantic Trading are proprietary trading firms that trade around the clock. ¶¶ 11, 16-17. Rowan traded Eurodollar futures on all but two trading days (a total of **3,930,522 contracts**) during 2013. ¶15. Plaintiffs Proctor, RCA, and Vecchione "regularly" traded Treasury and Eurodollar futures in 2013. ¶¶ 12, 14. Collectively, Plaintiffs transacted in Treasury and Eurodollar Futures on all trading days for 23 hours a day during 2013. ¶ 17. Plaintiffs further alleged that they earned lower profits and/or suffered losses as a result of Defendants' manipulation through spoofing. ¶¶ 11-18.

### Defendants' Non-Public Records

As the Court observed, "futures market participants based trading decisions on CME Globex's electronic 'Order Book.' The order book displays quantities of anonymous orders or offers to sell futures contracts and bids to buy futures contracts at various price points or 'levels.'" ECF No. 49 at 3 (citing ¶ 33). "Market participants can see the number of orders and total number of contracts on which traders are offering or bidding in the order book, but the quotes entered in the book are anonymous. As relevant here, traders cannot determine from the order book whether the same trader is placing serial orders to buy and sell." *Id.* (citing ¶ 34). Accordingly, Plaintiffs could not have simply looked at the historical order book to determine precisely when Defendants' manipulation by spoofing occurred.

As the Court observed, Plaintiffs "have argued forcefully and persuasively that the structure of the CME Globex system, coupled with restrictions on regulators and third parties preventing disclosure of public information about specific trades, make it nearly impossible to plead details of specific trades without some discovery from defendants." *Id.* at 10 (citing ¶¶ 82–92; *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d at 617). Plaintiffs allege that they "'will be able to

ascertain the full extent of Deutsche Bank's spoofing misconduct in Treasury and Eurodollar futures only after they are given access to Deutsche Bank's trading data concerning these instruments.'" *Id.* (quoting ¶ 92).

## ARGUMENT

### I. Plaintiffs' Plead Article III Standing.

Article III requires plaintiffs to allege: (1) injury-in-fact; (2) traceability; and (3) redressability. *See Lujan*, 504 U.S. at 560–61. When analyzing standing, at the pleadings stage, Courts are to "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561. Article III standing does not require establishing statutory standing, nor does Article III standing require success on the merits of Plaintiffs' substantive claim. *Loeb Indus., Inc. v. Sumitomo Corp.*, 306 F.3d 469, 480–81 (7th Cir. 2002). Importantly, plaintiffs need only allege a "colorable" claim of injury, causation and redressability; requiring specifics improperly delves into the merits. *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) ("Were we to require more than a colorable claim, we would decide the merits of the case before satisfying ourselves of standing."); *see also Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020). In class actions, it is not required that all class representatives establish Article III standing for the Court to retain subject matter jurisdiction. *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 676 (7th Cir. 2009); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *25 (N.D. Ill. June 29, 2015).

Defendants' argument that Plaintiffs should plead specific details of Plaintiffs' and Defendants' trades is both factually incorrect and procedurally improper. Plaintiffs allege that they regularly traded Treasury and Eurodollar Futures at artificial prices during 2013, and they also allege that Defendants spoofed the markets for those instruments during 2013 on multiple

occasions. Plaintiffs thus sufficiently allege injury-in-fact that is fairly traceable to Defendants' spoofing.

There is no need for the particularity that Defendants seek. Spoofing creates effects that go beyond moving one specific contract price at one specific time in one specific amount. Widespread spoofing, as alleged here, causes durable distortions in market prices. The precise effect is a question of fact that cannot be resolved against Plaintiffs at this stage. Moreover, the argument that Plaintiffs did not trade in an artificial market because they have not alleged specific trades calls for an impermissible inference against Plaintiffs. *See In re Crude Oil Commodity Futures Litigation*, 913 F. Supp. 2d 41, 60 (S.D.N.Y. 2012) (unlike in the securities context, there is no "bright line indicating when losses begin or cease to accrue" in "the context of a CEA manipulation claim," and "the period during which the manipulative activity occurs is not necessarily a proxy for the period when losses attributable to artificial prices occur" and this is why CEA plaintiffs need not plead "the date and price of the specific [futures contracts] they bought and sold, and specific losses from those transactions."); *see also Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 782-83 (2d Cir. 2016) ("The net impact of a tainted LIBOR … is an issue of causation reserved for the proof stage; at this stage, it is plausibly alleged … that a manipulation of LIBOR exerted some influence on price. The extent of that influence … [is a] matter[] reserved for later."). The frequency with which Plaintiffs traded and with which Defendants spoofed together support the inference that during 2013, a Plaintiff's trade occurred while the market was distorted by Defendants' spoofing.

### A. Injury-in-Fact.

Establishing injury-in-fact is a "minimal requirement[]" at the pleadings stage. *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 590 (7th Cir. 2016). The "mere showing of harm will establish the necessary injury" to establish injury-in-fact. *Gelboim v. Bank of Am. Corp.*, 823 F.3d at 770. Thus, pleading a "financial injury creates standing." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695

(7th Cir. 2015). Indeed, injury is "presumed," where, as here, Plaintiffs traded in an artificial market. *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366, 380 (S.D.N.Y. 2010) (citing *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 244 F.R.D. 469, 475 (N.D. Ill. 2007), *aff'd*, 571 F.3d 672 (7th Cir. 2009). Injury-in-fact may be sufficiently pled "even if it strikes [the court] 'that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Diedrich*, 839 F.3d at 590.

Plaintiffs are only obliged to plead "enough facts to make their claim of injury colorable." *See Harry*, 889 F.3d at 111. In assessing Article III standing, the Plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695 (7th Cir. 2018) ("Complaints need not delineate every detail of the plaintiff's legal theory."). Many courts have held that "injury" for Article III standing purposes is satisfied with general allegations of trading during the general period in question. *See, e.g., In re Plasma-Derivative Protein Therapies,* 2012 WL 39766, at *6 ("While the complaint is silent as to how and where the alleged spot market transactions took place, the allegation of spot market purchases is the type of general allegation that is sufficient at this stage"); *see also IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 64 (2d Cir. 2019) (market participants have the "right to do business in a market undistorted by unlawful anticompetitive conduct"); *In re LIBOR-Based Fin. Instruments Antitrust Litig.* ("*LIBOR VII*"), 299 F. Supp. 3d 430, 459 (S.D.N.Y. 2018) (holding that "an injury-in-fact need not be capable of sustaining a valid cause of action").

Plaintiffs satisfy the injury-in-fact requirement by alleging facts indicating that it is "within the realm of possibility," *Harry*, 889 F.3d at 111, that at least one of their Treasury and Eurodollar futures trades occurred while prices were artificial as a result of Defendants' manipulative spoofing. The CFTC Order indicates that the manipulation occurred on "multiple occasions" during 2013. ¶¶ 74-75. As alleged, in and around 2013, a "culture of rampant spoofing prevailed throughout DBSI's trading offices worldwide," ECF No. 49 at 5 (citing ¶ 57). Moreover, "investigations of alleged trading

misconduct and manipulation by defendants in other markets around the same time show that defendants maintained a corporate culture that encouraged spoofing and manipulation." *Id.* (citing ¶¶ 57–71).

Also, during 2013, Plaintiffs collectively transacted in the manipulated markets on every trading day for 23 hours a day. ¶ 17. Specifically, Rock Capital and Atlantic Trading traded Treasury Futures, Eurodollar Futures, or both, on ***every trading day***, and Plaintiff Rowan traded Eurodollar Futures on ***all but two trading days***. ¶¶ 11, 15-16. As the Court observed, in 2013, all Plaintiffs allege that they "regularly transacted" in Treasury and Eurodollar futures. ECF No. 49 at 2 (citing ¶¶ 11–17, 31). Given the frequency with which the parties traded during 2013, it is certainly "within the realm of possibility" that Plaintiffs traded at artificial prices causing them to earn less profits and/or suffer greater losses in Treasury and/or Eurodollar Futures as a direct result of Defendants' manipulative spoofing. ¶¶ 11-16. Any other conclusion would require unreasonable inferences in favor of Defendants, rather than drawing the required reasonable inferences in favor of Plaintiffs. If anything, it would be implausible to suggest that all Plaintiffs completely avoided the effects of Defendants' spoofing.

**B. Traceability.**

In order to satisfy Article III standing, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (citations omitted). In CEA manipulation cases, traceability is satisfied by allegations that the market was artificial because of defendant's manipulation. *See Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 925-26 (7th Cir. 1995) (finding traceability where plaintiffs alleged suppression of the soybean market); *In re Commodity Exch., Inc.*, 213 F. Supp. 3d 631, 650 (S.D.N.Y. 2016) (traceability existed where plaintiffs allegedly sold gold at artificial prices).

9

Plaintiffs' injuries are fairly traceable to Defendants' misconduct because Plaintiffs allege a direct link between their losses and Defendants' spoofing. Plaintiffs allege that as a result of Defendants' manipulative spoofing, Plaintiffs transacted in Treasury and Eurodollar Futures at artificial prices, which caused them to suffer damages. ¶¶ 11-17, 74-75, 113. These allegations satisfy Article III's traceability requirement. *See In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 390 F. Supp. 3d 916, 928 (N.D. Ill. 2019) ("Plaintiffs have alleged that Cboe and the Does manipulated the VIX, causing plaintiffs—who purchased and sold VIX-related products—to lose money. Damages would remedy that injury, and at this stage, this is enough"); *Sanner*, 62 F.3d at 926 ("[I]f we accept as true the farmers' allegation that the Resolution, causing a mass liquidation of soybean futures contracts, prompted a drop in the cash price of soybeans, they have adequately alleged traceability.").

## C. Redressability.

"Generally, any person whose injury can be redressed by a favorable judgment has standing to litigate, and injuries compensable in monetary damages can always be redressed by a court judgment." *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005). Plaintiffs satisfy the redressability element of Article III standing because they seek to recover damages for losses they suffered as a result of Defendants' violations of the CEA and unjust enrichment resulting from their manipulation of the U.S. Treasury and Eurodollar Futures markets.

Because Plaintiffs have alleged the elements of Article III standing, jurisdictional discovery is "unnecessary." *Equal Rts. Ctr. v. Camden Prop. Tr.*, No. CIV. PJM07-2357, 2008 WL 8922896, at *7 n.9 (D. Md. Sept. 22, 2008).

## II. If the Court Holds Plaintiffs' Allegations to Be Deficient under Article III, the Court Should Order Jurisdictional Discovery.

If the Court determines that it cannot proceed with the present allegations bearing on Article III standing, then jurisdictional discovery is warranted. As the Supreme Court observed, discovery is not "limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "For example, where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Id.* at 351 n.13. The "trial court does have jurisdiction to determine its own jurisdiction," and "it is clear that a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction." *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). Such discovery is warranted "where pertinent facts bearing on the question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is necessary." *Id.* (citations and internal quotations omitted).

A "district court confronted with a factual challenge to its jurisdiction cannot ignore a genuine factual dispute simply because it arises at the pleading stage," but instead must "inquire into its jurisdiction," including "probing and resolving any factual disputes which go to its power to adjudicate the matter." *Am. Civ. Liberties Union of Florida, Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017). The Federal Rules of Civil Procedure "expressly contemplate involvement by the parties in the discovery of relevant non-privileged matter," and "jurisdictional discovery undoubtedly is" such a matter. *Id.* This is "particularly true when jurisdictional facts are intertwined with facts central to the merits of the complaint." *Id.* "In such cases, a plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Id.* (citations omitted).

Accordingly, courts routinely allow jurisdictional discovery. For example, in *Crabtree*, 948 F.3d at 876, the district court had ordered "extensive and complete jurisdictional discovery on whether [plaintiff] had alleged the requisite injury-in-fact to satisfy Article III's case or controversy

requirement," which aided the district court's and Court of Appeals' determination as to plaintiff's Article III standing. *Id.* Likewise, in *Boim,* 9 F.4th at 550, the Seventh Circuit observed that the district court had allowed limited jurisdictional discovery into its subject matter jurisdiction, which turned on whether defendant was an alter ego, and held that the district court erred when dismissing the suit on jurisdictional grounds. In *Am. Civ. Liberties Union of Florida, Inc.,* 859 F.3d at 1341, the Eleventh Circuit reversed a district court's refusal to allow discovery into its subject matter jurisdiction, which turned on whether defendant acted in an official capacity necessary to justify federal jurisdiction and made clear that a district court "abuses its discretion if it completely denies a party a right to jurisdictional discovery." *Id.*

Courts have tailored jurisdictional discovery in a variety of ways depending on the needs of the case. In *Muellner v. U.S. Bank, N.A.*, No. 15-CV-0596 PJS/LIB, 2015 WL 4374180, at *1 (D. Minn. July 15, 2015), for example, the district court "question[ed] whether, even assuming that defendants acted unlawfully in obtaining or issuing force-placed insurance, plaintiffs were harmed in any way by defendants' actions." It gave the parties "a period of approximately three months to take jurisdictional discovery—that is, discovery on whether plaintiffs have Article III standing to pursue their individual claims." *Id.* Likewise, in *Grupo Petrotemex, S.A. DE C.V. v. Polymetrix AG*, No. 16-CV-2401 (SRN/HB), 2019 WL 1230003, at *1 (D. Minn. Mar. 15, 2019), defendant filed a Rule 12(b)(1) motion to dismiss for lack of standing, and the district court "noted the paucity of evidence in support of an 'injury' that was 'fairly traceable'" to defendants' conduct." *Id.* After "order[ing] the parties to engage in 90 days of focused, jurisdictional discovery to determine if evidence existed from which plaintiff [could prove] 'injury in fact' and 'causation' under Article III," the district court "satisfied itself that an actual 'case or controversy'" existed and denied the motion to dismiss.

Here, pre-existing, non-privileged documents furnished to or by the CFTC (and those in any related CME and/or CBOT investigations) would be sought in discovery. To the extent Defendants'

order and trade history is not in those files, the full record of Defendants' orders, trades and cancelations in CBOT Treasury and CME Eurodollar futures during 2013 also would be sought. Defendants are in a better position to know what documents reflect these orders, cancelations, and trades.   At present, Plaintiffs reasonably believe that these documents are readily accessible to Defendants and capable of being produced in short order.   Even if these documents were not produced to the CFTC or exchanges, they were likely compiled in the course of Defendants' risk monitoring, compliance monitoring or investigation into the subject conduct.   Plaintiffs anticipate that these records have been assembled and disclosed to regulators.   Under these circumstances, the type of discovery that Plaintiffs propose is reasonable.

Courts regularly permit pre-motion to dismiss production of documents that were disclosed to regulators.  *See, e.g.*, *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-md-2687-JLL-JAD (D.N.J. July 5, 2016), ECF No. 209 (order requiring production of DOJ documents prior to filing consolidated complaints).   As one court put it, "plaintiff is simply asking for a transfer of the documents that the defendant has already collected, reviewed, produced to the CFTC . . ., all of which can be subject to the confidentiality order which the parties have negotiated.   So what is the burden? What's the cost? The answer is very little." *Anastasio et al v. Total Power North Am., Inc. et al*, 15-cv-9689 ECF No. 78 (S.D.N.Y. Jul. 27, 2016); *see also In re Diisocyanates Antitrust Litig.*, No. 18-mc-01001, ECF No. 149 (W.D. Pa. Jan. 15, 2019) ("the cost of production and the burden of producing the records should be minimal due to the previous production; and efficiency and economy is best served by production at this time"); *In re Platinum & Palladium Commodities Litig.*, No. 10 Civ. 3617 (WHP), 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010) (ordering production of 250,000 pages of documents previously produced to the CFTC, finding that the production would not be burdensome); Indeed, in the absence of these documents, it is Plaintiffs who would be prejudiced. *See In re Bank of Am. Corp. Sec.*, No. 09 MDL 2058(DC), 2009 WL 4796169, at *3 (S.D.N.Y. Nov. 16, 2009) ("Without access to documents

produced in these other proceedings, plaintiffs in these cases will be unduly prejudiced and will be less able to make informed decisions about litigation strategy.").

Plaintiffs will meet-and-confer with Defendants regarding the scope of the foregoing should the Court order jurisdictional discovery.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs have established their Article III standing on the pleadings. Alternatively, leave to take jurisdictional discovery of Defendants should be granted.

Dated: October 11, 2021

Respectfully Submitted,

*/s/ Vincent Briganti*
**LOWEY DANNENBERG, P.C.**
Vincent Briganti
Raymond P. Girnys
Peter A. Barile III
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500
Email: vbriganti@lowey.com
rgirnys@lowey.com
pbarile@lowey.com

*Interim Co-Lead Counsel for the Proposed Class*

**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
Anthony F. Fata
Jennifer W. Sprengel
Brian P. O'Connell
Kaitlin Naughton
150 S. Wacker, Suite 3000
Chicago, IL 60606
Tel.: 312-782-4880
Email: afata@caffertyclobes.com
jsprengel@caffertyclobes.com
boconnell@caffertyclobes.com
knaughton@caffertyclobes.com

*Interim Co-Lead Counsel for the Proposed Class*

14

**KIRBY MCINERNEY LLP**
Karen M. Lerner
David E. Kovel
Anthony E. Maneiro
250 Park Avenue, Suite 820
Tel: 212-371-6600
Email: klerner@kmllp.com
dkovel@kmllp.com
amaneiro@kmllp.com

*Counsel for Plaintiff Charles Herbert Proctor, III*

**FREED KANNER LONDON & MILLEN LLC**
Steven A. Kanner
Douglas A. Millen
Brian M. Hogan
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Tel: (224) 632-4500
Fax: (224) 632-4521
skanner@fklmlaw.com
dmillen@fklmlaw.com
bhogan@fklmlaw.com

*Counsel for Plaintiff David Vecchione*

**KOREIN TILLERY LLC**
George A. Zelcs (Ill. Bar No. 3123738)
Randall P. Ewing, Jr. (Ill. Bar No. 6294238)
Chad E. Bell (Ill. Bar No. 6289034)
205 North Michigan Plaza, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751
Email: gzelcs@koreintillery.com
Email: rewing@koreintillery.com
Email: cbell@koreintillery.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Louis F. Burke
Thomas K. Boardman
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169

15

Telephone: (212) 233-6444
Facsimile: (212) 233-6334
Email: lburke@scott-scott.com
Email: tboardman@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW
    LLP**
Christopher M. Burke
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
Email: cburke@scott-scott.com

*Counsel for Plaintiff Robert Charles Class A, L.P.*

**GRABAR LAW OFFICE**
Joshua H. Grabar, Esq.
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel.: (267) 507-6085
Email: jgrabar@grabarlaw.com

**EDELSON LECHTZIN LLP**
Marc H. Edelson, Esq.
Edelson Lechtzin LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Tel.: (215) 867-2399
Email: medelson@edelson-law.com

*Counsel for Plaintiff Todd Rowan*

16

**CERTIFICATE OF SERVICE**

I, Vincent Briganti, an attorney, hereby certify that on October 11, 2021, service of the foregoing Plaintiffs' Opening Brief in Support of Article III Standing or Limited Jurisdictional Discovery was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

s/ *Vincent Briganti*
Vincent Briganti