# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| | ) | Case No. 20-cv-3638 |
| In re Deutsche Bank Spoofing Litigation | ) | |
| | ) | Judge Joan B. Gottschall |
| | ) | |

## <u>ORDER</u>

The court has before it supplemental briefing on whether plaintiffs' consolidated complaint, ECF No. 40, adequately alleges standing under Article III of the Constitution and whether plaintiffs should be permitted to take jurisdictional discovery to determine whether standing exists. For the following reasons, the court finds that the standing and merits issues are intertwined and authorizes a limited period of jurisdictional discovery.

### Background

Plaintiffs' claims arise under the Commodity Exchange Act ("CEA"), 7 U.S.C. § 1 et seq. This court's order dated September 20, 2021 ("briefing order"), described plaintiffs' complaint and plaintiffs' allegations in detail. *See* Briefing Order at 2–7, ECF No. 49. By way of a short summary, plaintiffs regularly trade Treasury or Eurodollar futures ("EDF") contracts, according to their complaint. They have sued Deutsche Bank AG ("DBAG") and Deutsche Bank Securities Inc. ("DBSI") (collectively, "defendants"), based on allegations that defendants "spoofed the markets for Treasury and Eurodollar Futures throughout the Class Period," that is, during calendar year 2013. Compl. ¶¶ 18, 93. As a result, plaintiffs allege that they were "deprived . . . of the ability to transact in a lawful market that was free of manipulation and caused Plaintiffs and the Class to pay more to purchase, or receive less to sell, Treasury and Eurodollar Futures." *Id.* ¶ 18.

"Eurodollars are U.S. dollars deposited in commercial banks outside the United States." Compl. ¶ 42. As defined by plaintiffs, spoofing "entails: (a) submitting or cancelling bids or offers to overload the quotations system of a registered entity; (b) submitting or cancelling bids or offers to delay another person's execution of trades; (c) submitting or cancelling multiple bids or offers to create an appearance of false market depth; or (d) submitting or canceling bids or offers with the intent to create artificial price movements." Compl. ¶ 44; *see also* Briefing Order at 3–5.

Plaintiffs allege that, due to the nature of spoofing and the lack of publicly available information, plaintiffs do not know with certainty the dates of defendants' alleged spoofing nor the identities of the traders involved. Compl. ¶ 6. Plaintiffs' claims stem in part from a Commodities Futures Trading Commission ("CFTC") order, *Deutsche Bank Sec. Inc.*, CFTC No. 20-17, 2020 WL 3444513 (June 18, 2020), in this record at ECF No. 42-1, disclosing the Commission's acceptance of an offer to settle, without an admission of liability, allegations of spoofing in the Treasury and Eurodollar futures markets in January–December 2013. *See* Briefing Order at 5–6. The CFTC order includes no specific date(s) of alleged spoofing and does not specify how frequently spoofing allegedly occurred. *See id.*

According to the complaint, plaintiffs "will be able to ascertain the full extent of Deutsche Bank's spoofing misconduct in Treasury and Eurodollar futures only after they are given access to Deutsche Bank's trading data concerning these instruments." Compl. ¶ 92. Defendants moved to dismiss the complaint on the merits for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). This court ordered the parties to brief Article III standing, stating as follows:

> Defendants raise important and thorny legal questions concerning the scope of the private right of action created by the CEA. . . . Defendants also argue, *inter alia*,

that the complaint fails to plead that any plaintiff suffered actual damages: "Plaintiffs fail to plausibly allege that they transacted in even one Treasury Future or EDF at an affected price or even that an affected price actually existed. Plaintiffs do not identify specific transactions, the direction of manipulation, or whether [they] paid more or accepted less. . . . Plaintiffs fail to plead facts regarding any specific date on which any Plaintiff traded, which EDF [Eurodollar futures] or Treasury Future was traded, or whether that transaction was sold for less or bought for more money than it would have been otherwise." Defs.' Mem. Supp. Mot. to Dismiss 11, ECF No. 42 (internal quotations and citations omitted).

Plaintiffs respond that it is reasonable to infer that defendants' alleged manipulation adversely affected at least one of their Treasury or Eurodollar trades because they regularly traded in Treasury and Eurodollar futures in 2013, and the CFTC Order settled allegations that DBSI traders engaged in spoofing on various, unspecified occasions the same year. *See* Pls.' Resp. Mem. 6–7, ECF No. 44.

Briefing Order at 7–8.

Relying on cases cited by the parties, this court determined, "Although the parties have briefed the actual damages question as a merits issue, their arguments also implicate the injury in fact and traceability requirements of Article III standing." *Id.* at 8–9 (citing, among other authorities, *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 154–55 (S.D.N.Y. 2018)). Because standing had not been briefed and "the case law on standing to bring a private manipulation claim under the CEA is complex and often highly fact-sensitive," *id.* at 9 (citations omitted), this court directed the parties to brief the following questions: "(1) does the complaint adequately allege the elements of Article III standing? And (2) if not, is limited jurisdictional discovery appropriate?" *Id.* at 9–10.

## Analysis

The requirement that a litigant invoking the jurisdiction of a federal court establish standing to sue stems from Article III of the Constitution, which limits the jurisdiction of the federal courts to "cases" and "controversies." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly

traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Cruz*, 142 S. Ct. at 1446 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Each element of standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561 (citations omitted).

At the pleading stage, standing challenges generally fall into two categories–facial and factual attacks. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (citing *Bazile v. Fin. Sys. of Green Bay, Inc.,* 983 F.3d 274, 279 (7th Cir. 2020)); *see also Apex Digit., Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 444–45 (7th Cir. 2009). The parties disagree about which type of challenge has been raised here. "A facial attack 'tests whether the [complaint's] allegations, taken as true, support an inference that the elements of standing exist,' and a factual attack 'tests the existence of jurisdictional facts underlying the [complaint's] allegations.' " *Prairie Rivers*, 2 F.4th at 1007 (quoting *Bazile*, 983 F.3d at 279). A factual attack "lies where 'the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction,' " as where a party points to facts outside the complaint to show that there is no jurisdiction or puts at issue the complaint's well-pleaded facts supporting jurisdiction. *See Apex. Digit.*, 572 F.3d at 443–44.

Defendants characterize their standing challenge as a facial attack. Defs.' Suppl. Resp. 8–9, ECF No. 51. Plaintiffs contend that in reality defendants are mounting a factual attack on allegations in the complaint, such as their assertions that their trades overlapped with defendants' alleged spoofing activity. Pls.' Suppl. Reply 6–7, ECF No. 52.

Regardless of whether defendants are mounting a facial or factual attack on standing, the attack raises causation questions that are intertwined with the merits of plaintiffs' CEA claims.

4

Indeed, defendants originally briefed their causation arguments as merits questions. *See* Defs.' Mem. Supp. Mot. to Dismiss 5–14. As pleaded in the complaint and made apparent in the supplemental briefing, the key factual questions concern the number, frequency, and extent of trades in which alleged spoofing occurred; this information is unavailable to plaintiffs without discovery. *See, e.g.*, Compl. ¶ 92. Those factual questions inform the analysis of Article III's injury in fact and traceability requirements, as well as merits questions concerning the CEA's causation element.

This case therefore falls into the "class of those [cases] where standing and the merits are inextricably intertwined." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 n.5 (1983) (quoting *Holtzman v. Schlesinger*, 414 U.S. 1316, 1319 (1973)); *see also Walters v. Edgar*, 163 F.3d 430, 434–35 (7th Cir. 1998); *Price v. Pierce*, 823 F.2d 1114, 1119 (7th Cir. 1987); *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986). Where standing and merits issues are intertwined, courts may, in their discretion, postpone resolution of the standing issue until the factual record has been more fully developed. *See, e.g.*, *OrthoPediatrics Corp. v. Wishbone Med., Inc.*, 2021 WL 3887243, at *5 (N.D. Ind. Aug. 31, 2021); *Markle v. Drummond Advisors, LLC*, 2020 WL 777272, at *3–4 (N.D. Ill. Feb. 18, 2020); *Gruen Mktg. Corp. v. Benrus Watch Co.*, 955 F. Supp. 979, 982 (N.D. Ill. 1997). But postponing standing questions comes with a risk of driving up unnecessarily the costs of litigation and discovery to the parties and the court, for if the court later determines that no named plaintiff has standing, "the federal court lacks subject matter jurisdiction and the suit must be dismissed" without reaching the merits. *Int'l Union of Operating Eng'rs, Local 139 v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020) (quoting *Taylor v. McCament*, 875 F.3d, 853 (7th Cir. 2017)). As this court's briefing order explained, here there is a significant danger of deciding "thorny" merits questions at the motion to dismiss

stage, even though standing may ultimately be found to be lacking following appropriate discovery. Briefing Order at 7–8. Because of these concerns, the court directed the parties to brief limited jurisdictional discovery. *See id.* at 10.

Federal courts possess discretion to authorize discovery relevant to contested jurisdictional facts. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 708–09 (1982); *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015); *Cent. States, Se. and Sw. Areas Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006); *Perry v. Pogemiller*, 16 F.3d 138, 139–40 (7th Cir. 1993). This includes the power to permit jurisdictional discovery on Article III standing. *E.g., Daly v. Eagleson*, 2021 WL 4439428, at *5 (N.D. Ill. Sept. 27, 2021); *Access 4 All, Inc. v. Chi. Grande, Inc.*, 2007 WL 1438167, at *10 (N.D. Ill. May 10, 2007); *K.G. ex rel. P.G. v. Hamos*, 2014 WL 274130, at *5 (C.D. Ill. Jan. 24, 2014); *see also Crabtree v. Experian Info. Sols., Inc.*, 948 F.3d 872, 876 (7th Cir. 2020).

Plaintiffs proposed conducting limited jurisdictional discovery as follows:

> Here, pre-existing, non-privileged documents furnished to or by the CFTC (and those in any related CME [Chicago Mercantile Exchange] and/or CBOT [Chicago Board of Trade] investigations) would be sought in discovery. To the extent Defendants' order and trade history is not in those files, the full record of Defendants' orders, trades and cancelations in CBOT Treasury and CME Eurodollar futures during 2013 also would be sought.

Pls.' Suppl. Br. 12–13, ECF No. 50.

Defendants do not argue that the proposed jurisdictional discovery would be unduly burdensome except insofar as they maintain that discovery is not appropriate if the complaint fails to allege the elements of standing. Defs.' Suppl. Resp. 8–11. That argument fails to persuade in view of the court's conclusion that the standing and merits issues defendants have

raised are intertwined, and as stated above, in such circumstances, the court has discretion to allow some jurisdictional discovery.

Because plaintiffs' proposal for discovery appears to be manageable and considerably less burdensome than full merits discovery (yet relevant to the merits if standing is present), the court authorizes plaintiffs to conduct limited discovery consistent with the proposal in their supplemental memorandum. ECF No. 50 at 12–13. As plaintiffs propose, the parties are directed to confer and submit a proposed limited discovery plan within 14 days (on or before August 3, 2022).

Dated: July 20, 2022 _____/s/_____

Joan B. Gottschall
United States District Judge